IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRANDON WYATT PEEVY, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV–22–57–JAR |
| ) | |
| KILO KIJAKAZI, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Brandon Wyatt Peevy (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is **REVERSED** and the case is **REMANDED** for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental

impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800–01.

### Claimant's Background

The claimant was thirty-nine years old at the time of the administrative hearing. (Tr. 1205, 1207). He possesses at least a high school education. (Tr. 1205). He has worked as a surveyor's helper, line walker, unit assembler, and garbage collector. (Tr. 1205). Claimant alleges that he has been unable to work since February 11, 2016,[2] due to limitations resulting from PTSD, steatohepatitis, high blood pressure, manic episodes, anxiety and depression, severe depression bipolar disorder with psychotic feature, panic disorder with agoraphobia, generalized anxiety disorder, alcohol induced pancreatitis, and deep vein thrombosis. (Tr. 1286).

### Procedural History

On February 11, 2016, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, et seq.) of the Social

---

[2] Although Claimant initially alleged an onset date of May 28, 2015, he subsequently amended his alleged onset date to February 11, 2016, his protective filing date. (Tr. 1640).

3

Security Act. Claimant's application was denied initially and upon reconsideration. After an administrative hearing, Administrative Law Judge James Linehan issued an unfavorable decision on August 1, 2017. Appeals Council denied review, so the ALJ's written opinion was the Commissioner's final decision. *See* 20 C.F.R. § 416.1481. This Court found that the ALJ's opinion was not supported by substantial evidence and thus reversed and remanded the decision of the Commissioner for further proceedings on May 20, 2019. While Claimant's appeal of the decision to this Court was pending, he filed a second Title XVI application on August 21, 2018, which was subsequently consolidated with his original claim. Administrative Law Judge Doug Gabbard, II, ("ALJ") scheduled an administrative hearing for August 20, 2019, but Claimant failed to appear. After an administrative hearing with Claimant in attendance, ALJ Gabbard issued an unfavorable decision on March 18, 2020. On review, Appeals Council vacated the decision and remanded the case back to ALJ Gabbard. After the third and latest administrative hearing, ALJ Gabbard issued an unfavorable decision on October 28, 2021. As Claimant did not request review from the Appeals Council and they did not assume jurisdiction, the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1484.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained

the residual functional capacity ("RFC") to perform light work with limitations.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) improperly evaluating the medical opinion evidence of Dr. Farrow, and (2) failing to consider Claimant's potential entitlement to a closed period of disability.

## Consideration of Medical Evidence

In his decision, the ALJ determined Claimant suffered from the severe impairments of lumbar spine degenerative disc disease; superior mesenteric vein and portal vein thrombosis; hepatic steatosis with no evidence of cirrhosis; bipolar depression; generalized anxiety disorder; panic disorder with agoraphobia; intermittent explosive disorder; PTSD; alcohol dependence, severe, in early remission; and methamphetamine dependence, severe, in full remission. (Tr. 1187). The ALJ concluded that Claimant retained the RFC to perform light work. Specifically, the ALJ found that Claimant can occasionally climb, balance, stoop, and kneel but can never crouch, crawl, or walk on uneven surfaces. Claimant can frequently reach bilaterally. Further, the ALJ limited Claimant to unskilled work, which is simple, repetitive, and routine, with simple, supportive, and non-confrontational supervision. Claimant must only have contact with supervisors and coworkers that is incidental to the work performed, such as in the case of assembly work. Additionally, Claimant can only have occasional, casual contact with the general public. Claimant will work best in well-spaced

work settings and should not be required to work at fast-paced production line speeds. Changes in the work-place should be only occasional and gradually introduced. Finally, the ALJ opined that Claimant must have normal, regular work breaks at least every two hours, as normally allowed in competitive work. (Tr. 1191). After consultation with a vocational expert, the ALJ found that Claimant could perform the representative jobs of marker, housekeeping cleaner, and laundry folder. (Tr. 1206). As a result, the ALJ found Claimant has not been under a disability since February 11, 2016, the date the application was filed. (Tr. 1207).

Claimant contends that the ALJ did not properly consider and discuss the medical evidence presented by treating physician Dr. Theresa Farrow. Specifically, Claimant argues that the ALJ's reasoning was not supported by substantial evidence as there was evidence in the record that directly contradicted the ALJ's assertions.

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight."[3] *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic

---

[3] For claims filed on or before March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1527 and 416.927. As Claimant's protective filing date on the consolidated claims is still February 11, 2016, this Court will apply the standards set forth in 20 C.F.R. §§ 404.1527 and 416.927. However, notwithstanding the standard applied, the ALJ erred in the consideration of the medical opinion evidence.

6

techniques"; and (2) "consistent with other substantial evidence in the record." *Id.* (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.* Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Id.* (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at 1300–01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." *Id.* "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Watkins*, 350 F.3d at 1301 (quotations omitted).

7

In considering Dr. Farrow's opinion, the ALJ stated that he did not give Dr. Farrow's medical source statements controlling weight as they were not "well-supported by medically acceptable clinical and medical diagnostic techniques and tests, and [were] inconsistent with other substantial evidence in the record." (Tr. 1202–1203). The ALJ went through each of Dr. Farrow's opinions and rejected most stating that his psychiatric symptoms had improved, were mild, or rarely occurred. (Tr. 1203). Claimant however contends that the ALJ erred in his characterization of, among other things, Claimant's homicidal and suicidal ideation. The ALJ in his analysis of Dr. Farrow's opinion stated that Claimant "had endorsed homicidal ideations just once . . . after having been off his medication." (Tr. 1202).

Further that ALJ reasoned that Dr. Farrow's opinions were inconsistent with the record because the Claimant "consistently denied both homicidal and suicidal ideation otherwise." (Tr. 1202). However, this assertion is not reflected in the medical record. As Claimant points out, the record is riddled with treatment notes confirming Claimant's suicidal ideation. (Tr. 2023, 2029, 2037, 2067, 2130). These records indicate that Dr. Farrow's limitations could be supported by the medical record. The ALJ, nonetheless, rejected the limitations assigned by Dr. Farrow on the false pretense that Claimant had limited suicidal ideations. On remand, the ALJ shall reconsider Dr. Farrow's medical opinion evidence as a whole and align his consideration of the opinion with the medical evidence of record. Given that this Court is reversing on the ALJ's improper

8

consideration of the medical opinion evidence, it need not address the additional arguments at this time.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge finds for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be and is **REVERSED** and the case be **REMANDED** for further proceedings.

**DATED** this 11th day of October, 2023.

_____
**JASON A. ROBERTSON**
**UNITED STATES MAGISTRATE JUDGE**